# EXHIBIT 1

Kelly, Ewa Maria
New York, NY

# NEW FINANCIAL ADVISOR TRAINING AGREEMENT

## 1.    OFFER OF NEW FINANCIAL ADVISOR POSITION

WELLS FARGO ADVISORS, LLC ("Wells Fargo Advisors"), its successors and assigns, hereby offers you a position with the title of "New Financial Advisor" ("New FA") in our New York, NY branch office with an initial start date of April 16, 2012. This Agreement is conditioned upon commencement of your employment on or before that initial start date. This offer and this Agreement will be void if you fail to commence employment by that date. You understand that this offer is contingent upon your successful completion of all required pre-employment screenings prior to your initial start date. This Agreement shall be effective upon the first date that all the parties have signed the signature page hereof (the "Effective Date").

## 2.    FINANCIAL ADVISOR TRAINING PROGRAM

You will be enrolled in the Financial Advisor Training Program (the "Training Program") and provided with such instructional materials and other assistance as Wells Fargo Advisors in its sole discretion deems reasonable and necessary to prepare you to become a Wells Fargo Advisors Financial Advisor.  You are expected to complete satisfactorily all assignments and training obligations of the Training Program.

## 3.    NEW FINANCIAL ADVISOR COMPENSATION PLAN

For your services as a New FA employee of Wells Fargo Advisors, your starting salary will be ▆Redacted▆ paid on a bi-weekly basis.  At least initially, you will be eligible for overtime pay.  You agree to report all overtime in writing to your Branch Manager. Your compensation will be paid in accordance with the New Financial Advisor Compensation Plan (the "New FA Compensation Plan"), as that Plan may be modified from time to time.  You acknowledge that you have had an opportunity to review a copy of the current New FA Compensation Plan.  You will be eligible to receive such compensation components as may be set forth in the New FA Compensation Plan from time to time, or as may be otherwise determined by Wells Fargo Advisors in its sole discretion.  You will also be eligible for the benefits that are generally available to similarly situated Wells Fargo Advisors employees, provided that you meet the terms and conditions of such benefit programs.

## 4.    COMPENSATION UPON GRADUATION FROM TRAINING PROGRAM

Upon attainment of your Series 7, Series 66, and State insurance licenses and graduation from the Training Program, your title will change from "New FA" to "Financial Advisor". With this change, you will be eligible to receive monthly compensation and a monthly draw in accordance with the New FA Compensation Plan.  Once your title changes from New FA to Financial Advisor, you will no longer be eligible for overtime pay.

## 5.    LICENSES AND REGISTRATIONS

You will be required to obtain all licenses and registrations from the Financial Industry Regulatory Authority ("FINRA"), the New York Stock Exchange ("NYSE") and other securities exchanges, state securities commissions, and such other regulatory bodies as Wells Fargo Advisors shall deem necessary or desirable in order for you to perform the principal duties of your job. Failure to pass the Series 7 midterm exam by the second attempt, or failure to obtain the Series 7 license or the Series 66 license on the first attempt, may lead to consequences, up to and including termination from the Training Program.  If you receive approval from your Branch Manager to extend your Series 7 or Series 66 study time in preparation for those exams, you agree that your Training Program graduation class will change, and your test dates will extended.  If you are terminated from the Training Program, Wells Fargo Advisors will have no obligation to place you in another position, and you may be terminated from employment with Wells Fargo Advisors.  Additionally, your failure to behave professionally and to participate fully in all aspects of the Training Program may result in termination from employment.

6.    **COMPLIANCE**

Once you become a Financial Advisor, you will be required to retain and maintain all licenses and registrations from FINRA and the NYSE, the other securities exchanges, state securities commissions and other such regulatory bodies as Wells Fargo Advisors shall deem necessary or desirable in order for you to perform the principal duties of your job and to service any accounts assigned to you. At all times, you agree to abide by all existing and future federal, state and local laws, all rules and regulations set forth by all regulatory agencies, exchanges and self-regulatory bodies, and Wells Fargo Advisors' own internal rules, regulations, policies and procedures, including without limitation the Wells Fargo Team Member Code of Ethics as in effect from time to time. Without limiting the foregoing, you acknowledge that Wells Fargo Advisors compliance policy prohibits you from accepting from a client (except from or on behalf of a family member and only after any authorization required by compliance policy) the following:  (i) any designation as a beneficiary, including under a will, annuity, life insurance or trust; (ii) any fiduciary appointment (i.e., custodian, executor, trustee or guardian); (iii) any grant of power of attorney; or (iv) any bequest. You further specifically acknowledge and agree that this Agreement does not supersede or replace, in part or whole, any provisions of the Wells Fargo human resources policies and programs or any Wells Fargo Advisors compliance or regulatory guidelines and that you will remain subject to such policies, programs and guidelines.

7.    **EMPLOYMENT AT WILL**

Wells Fargo Advisors adheres to a policy of employment at will. Thus, your employment at Wells Fargo Advisors is based on mutual consent.  You are not hired for any specified term or duration pursuant to a contract of employment, written or oral.  You have the right to end your relationship with Wells Fargo Advisors at any time and for any reason you deem appropriate.  Similarly, Wells Fargo Advisors may terminate the employment of any employee at its discretion at any time for any reason.  No other practice, written or oral policy or statement by anyone can alter the at-will nature of your employment.

8.    **EFFECT OF AGREEMENT; MODIFICATION; ENTIRE AGREEMENT**

This Agreement serves only as a synopsis of the compensation and other arrangements in effect during your employment with Wells Fargo Advisors.  However, any alteration to, modification of, or change in this synopsis shall not be valid unless in writing and executed by you and a duly authorized officer of Wells Fargo Advisors at a level of Regional President or higher; provided, however, that this provision shall not be applicable to changes to any Wells Fargo Advisors compensation or benefit plans or policies, which plans and policies Wells Fargo Advisors, in its sole discretion, may modify, amend or terminate at any time. You further acknowledge that no one has made any oral representations to you with respect to the terms of your employment at Wells Fargo Advisors that are not contained herein, and that you are not relying on any such representations in connection with your decision to accept employment with Wells Fargo Advisors.

9.    **TERMINATION OF EMPLOYMENT**

   a)  ***Compensation Received or Salary Earned.***  Upon termination of your employment with Wells Fargo Advisors for any reason whatsoever, any revenue or fees "fronted" or advanced to your total gross revenue, together with any other awards or advanced compensation, will be recovered in the month of termination and offset by any compensation owed to you to the fullest extent permitted under applicable law.  You agree to repay Wells Fargo Advisors for any deficit balances (unrelated to the offset of the draw) outstanding at the time of termination. Wells Fargo Advisors shall be liable to you only for compensation earned and received by Wells Fargo Advisors, and/or salary earned but not yet paid to you prior to the effective date of the termination.   In calculating your final compensation, Wells Fargo Advisors may take into account any adjustments in accordance with the New FA Compensation Plan.  Any such adjustments must be permitted under applicable law and consistent with regulations issued under section 409A of the Internal Revenue Code.

   b)  ***Compensation Not Yet Received or Prepaid.***  You agree that to be eligible to receive and earn monthly compensation on transactions effected, insurance business placed, plan payments or fee payments made, you

2

must be employed on the date such payments are received by Wells Fargo Advisors.  With respect to contractual plans, insurance sales, management programs and fee-based accounts, you agree that any portion of the compensation or fees advanced or received by you that are in excess of the compensation or fees earned by Wells Fargo Advisors may be taken into account in the calculation of your monthly compensation.  You agree that you have no interest in, title to or claim for any revenue or fees if you are not employed by Wells Fargo Advisors on the applicable payout date.

10.  **REIMBURSEMENT OF TRAINING COSTS**

    a)  *Training Costs.*  Based upon your prior experience and qualifications, the training costs incurred by Wells Fargo Advisors for your participation in the Training Program (collectively, "Training Costs") are set forth below.  If your employment with Wells Fargo Advisors is terminated for any reason at any time, you agree that you shall reimburse Wells Fargo Advisors for these Training Costs, except as provided otherwise in Paragraph 10(b).

        i.  ▓Redacted▓ for a New FA who is hired with the Series 7 license.

        ii.  ▓Redacted▓ for a New FA who is hired without the Series 7 license.

    b)  *Exceptions to Reimbursement of Training Costs.*

        i.  If you remain in continuous employment with Wells Fargo Advisors throughout the five (5) year period after the later to occur of (A) the date on which you graduate from the Training Program, and (B) the date on which you become fully registered as a general securities representatives with both FINRA and the state in which your Branch Office is located, you will not be required to reimburse Wells Fargo Advisors for your Training Costs.

        ii.  You will have no obligation to reimburse Wells Fargo Advisors for Training Costs in the following circumstances:

            A.  If your employment with Wells Fargo Advisors is terminated, and for a period of one (1) year following such termination, you do not become employed or otherwise associated with a Competitive Organization or Entity.  "Competitive Organization or Entity" is defined as including, but not be limited to, any broker-dealer, bank, futures commission merchant, investment advisor, investment company, investment bank, commodity trading advisor, financial planner, mutual fund or insurance company or any other person, firm, corporation, or entity that competes with Wells Fargo Advisors.

            B.  If the branch office of Wells Fargo Advisors in which you work is closed (please note that a change in office location is not deemed to be a closing) and your employment is, as a consequence, terminated.

            C.  In the event of your permanent disability or death during the five year period identified in Paragraph 10(b)(i).

    c)  *Amortization of Reimbursable Training Costs.*  If you are required to reimburse Training Costs to Wells Fargo Advisors under this Paragraph 10, and if your employment is terminated at any time during the first year of your employment as a New FA, you shall reimburse the entire amount of Training Costs.  If your employment is terminated after your first year of employment as a New FA, the amount of Training Costs that you must reimburse shall be reduced by one-forty-eighth (1/48) of the total amount of Training Costs at the end of each month, beginning with the first month of the second year after your have begun employment as a New FA.

    d)  *Setoff Rights.*  Any amounts that you owe to Wells Fargo Advisors for reimbursement of Training Costs may

be taken into account in the calculation of your monthly compensation to the maximum extent permitted under applicable law and consistent with regulations issued under section 409A of the Internal Revenue Code.

## 11.   CONFIDENTIALITY

a) ***Confidential Information and Documents.***  You will maintain the following information and documents ("Confidential Information and Documents") during your entire period of employment with Wells Fargo Advisors and thereafter as the exclusive, confidential property of Wells Fargo Advisors:

   i.   All confidential information or trade secrets you may obtain in connection with the Training Program or in the course of your activities as a Wells Fargo Advisors employee, including, but not limited to, the names, addresses and telephone numbers of all persons or entities who are or at any time have been Wells Fargo Advisors clients or who have contacted or been contacted by Wells Fargo Advisors regarding Wells Fargo Advisors business, and information concerning the financial or investment background or status of such persons and entities;

   ii.  All records and other documents made and/or maintained in connection with Wells Fargo Advisors business; and

   iii. All information contained in or derived from such records and documents.  You shall be entitled to use Confidential Information and Documents only in the ordinary course of your activities as a Wells Fargo Advisors employee and shall otherwise keep all such information and documents confidential during and after your employment with Wells Fargo Advisors.

b) ***Post-Termination Duties.***  You acknowledge that the Confidential Information and Documents are not generally known outside Wells Fargo Advisors. This information was acquired by a great expenditure of time, effort and money, is unique and cannot be lawfully duplicated or easily acquired. You agree that the Confidential Information and Documents are the property of Wells Fargo Advisors and deserve trade secret protection. If your employment with Wells Fargo Advisors terminates for any reason, including, but not limited to, voluntary resignation, you shall immediately surrender possession of any Confidential Records or Documents, whether such documents are originals, duplicates or copies, or may be stored in computer memory or any other electronic form. You specifically acknowledge that following termination of your employment with Wells Fargo Advisors, you will not use or disclose, relate or transmit any Confidential Information and Documents in any form whatsoever to any other person or entity.

## 12.   POST EMPLOYMENT NON-SOLICITATION

a) ***Clients.***  If your employment with Wells Fargo Advisors terminates for any reason including, but not limited to, voluntary resignation, you shall not for a period of one (1) year following such termination, directly or indirectly, solicit or cause or permit to be solicited any Wells Fargo Advisors client that you had contact with or otherwise learned of during the course of your employment with Wells Fargo Advisors including, but not limited to, Wells Fargo Advisors clients whose accounts you serviced as a Wells Fargo Advisors Financial Advisor.

b) ***Employees.***  You will not recruit, entice, induce or solicit, directly or indirectly, during your employment with Wells Fargo Advisors, or for a period of one (1) year following your termination of employment by Wells Fargo Advisors, any employee of Wells Fargo Advisors or any of its affiliates, for employment with any other organization that does business in securities, banking, commodities and financial futures, insurance or any other lines of business in which Wells Fargo Advisors or any of its affiliates is engaged, or discontinuing his or her employment with Wells Fargo Advisors or any of its affiliates.

13.    **SETTLEMENTS, JUDGMENTS, AWARDS AND ERRORS**

a) ***Settlements, Judgments and Awards.*** To the fullest extent permitted under applicable law, you will be expected to contribute to any settlement, judgment or award arising out of your conduct or business, regardless of whether you are named as a party to a proceeding. In a situation where you are asked to contribute, the amount of the contribution will be determined after a consultation with your Branch manager, Regional President and/or Private Client Group Management and pursuant to applicable legal considerations. Your obligation in this regard will continue after any termination of employment with Wells Fargo Advisors.

b) ***Trade and Order Errors.*** You are responsible for preventing trade and order errors. You will be accountable for errors incurred from orders entered by you or by anyone on your behalf. You are subject to disciplinary action for trading errors that may have a financial impact on future earnings to the fullest extent permitted under applicable law. You are prohibited from receiving any profits from covering any error, and "trading" in an error account is not permitted.

c) ***Adjustments to Net Eligible Revenue.*** Any contribution to a settlement, judgment or award, or on account of any trade or order error will be taken into account as an adjustment to your Net Eligible Revenue in the calculation of monthly compensation under the New FA Compensation Plan. Any installment payment plans that are facilitated through a promissory note (i.e., charges spread beyond three (3) months) will be an after-tax adjustment.

14.    **RESOLUTION OF DISPUTES**

a) ***About Arbitration.*** This Agreement contains a predispute arbitration clause in Paragraph 14(b). You should read that paragraph now. Before signing this Agreement, you should understand the following:

   ✓ You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and Wells Fargo Advisors, or a client, or any other person. This means that you are giving up the right to sue Wells Fargo Advisors, its subsidiaries or employees or any client or any other person in court concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

   ✓ A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this Agreement.

   ✓ Specifically EXCLUDED from this obligation to arbitrate are any claims for State unemployment insurance (i.e., unemployment compensation, workers' compensation, work disability compensation or claims under the National Labor Relations Act.) However, statutory or common law claims made outside of the State employment insurance system alleging that Wells Fargo Advisors retaliated or discriminated against you for filing a State employment insurance claim shall be subject to arbitration. Also any claims that require you to process them under a different administrative procedure pursuant to the terms of an employee benefit plan shall not be subject to arbitration.

   ✓ Nothing in this Agreement prohibits you from filing a charge or complaint with a government agency such as the EEOC. However, upon receipt of a right to sue letter or similar administrative determination, you agree your claim will become subject to arbitration as noted herein.

   ✓ Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

   ✓ The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

   ✓ The arbitrators do not have to explain the reason(s) for their award.

✓ The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in the claim is filed.

✓ The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought to court.

b) *Agreement to Arbitrate.* Except as provided in Paragraph 14(c) below, you agree that any controversy or dispute, including but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortuous interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Wells Fargo Advisors, shall be submitted for arbitration before the FINRA. If the FINRA does not accept the controversy, dispute or claim, or any portion thereof, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules, effective May 1, 1993.

c) *Injunctive Relief.* Notwithstanding any other provision of this Agreement, Wells Fargo Advisors shall be entitled to injunctive relief from any court of competent jurisdiction to enforce the provisions of Paragraphs 11 and 12 of this Agreement against you.

## 15.   BINDING EFFECT; ASSIGNMENT

The parties hereby acknowledge that the terms and conditions set forth in this Agreement including, but not limited to, the confidentiality provisions, post-employment restrictions and indemnification obligations, survive your completion of the Training Program and/or the termination of your employment with Wells Fargo Advisors. You may not assign this Agreement, or the rights and duties set forth herein, to any third party. This Agreement is binding upon you, your heirs, administrators and executors. This Agreement may be enforced and assigned by Wells Fargo Advisors and its successors and assigns.

## 16.   GOVERNING LAW

This Agreement shall be construed and enforced in accordance with the laws of the State of Missouri (without reference to any choice of laws rules).

## 17.   SEVERABILITY; CAPTIONS

The parties to this Agreement desire and intend that, if any section, provision, paragraph and/or line (collectively, "Provision") of this Agreement is held to be unenforceable, then this Agreement shall be deemed amended to the extent necessary to render the otherwise unenforceable Provision, and the rest of the Agreement, valid and enforceable. If a court declines to amend this Agreement as provided herein, the invalidity or unenforceability of any Provision of this Agreement shall not affect the validity or unenforceability of the remaining Provisions, which shall be enforced as if the offending Provision had not been included in this Agreement. All captions or paragraph headings contained herein are for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

## 18.   WAIVER

Wells Fargo Advisors' decision to forgo enforcement of a breach of any covenant of this Agreement on an individual matter or matters will not constitute a waiver of Wells Fargo Advisors' right to enforce any other breach of the same or any other covenant.

19.   **RESTRICTIVE COVENANTS**

YOU ACKNOWLEDGE HAVING READ AND REVIEWED THIS AGREEMENT, INCLUDING THE RESTRICTIVE COVENANTS, IN THEIR ENTIRETY.  You acknowledge having been given an opportunity to ask questions about it. You have also been given an opportunity to consult with an attorney of your choice.  You agree that you fully understand the terms of this document and knowingly and freely agree to abide by them.

20.   **ENTIRE AGREEMENT; SURVIVAL**

This Agreement constitutes the entire understanding between you and Wells Fargo Advisors regarding the matters addressed herein.  All provisions of this Agreement that require survival of the provision upon termination of this Agreement in order to give full legal effect thereto shall survive the termination of this Agreement.

IN WITNESS WHEREOF, the parties have signed this Agreement, which shall be effective as of the Effective Date (defined in Paragraph 1).

**NEW FINANCIAL ADVISOR**

_____        _____
Ewa Maria Kelly                              DATE

**BRANCH MANAGER**

_____        _____
John McDermott                             DATE

## Signed agreement must be returned to

## PCG Agreements Administrator at H0004-136

## prior to class start date.

7