# EXHIBIT 9

**AMERICAN ARBITRATION ASSOCIATION**
**CLASS AND EMPLOYMENT ARBITRATION TRIBUNAL**

LIVIA SAPPINGTON, EWA KELLY a/k/a
EVA KELLY, and PATRICK LABORDE,
Individually and on behalf of all others
similarly situated,

<div style="margin-left:2em">Claimants,</div>

vs.

WELLS FARGO ADVISORS LLC and
WELLS FARGO & COMPANY,

<div style="margin-left:2em">Respondents.</div>

Case No. 01-15-0006-0146

**ORDER NO. 2**
**CLAUSE CONSTRUCTION AWARD**

I, the undersigned Arbitrator, having been appointed in accordance with the applicable agreements, and having been duly sworn, and having heard the proofs, allegations, and arguments of the Parties, hereby find and make this PARTIAL FINAL AWARD, as follows:

Pursuant to Rule 3 of the Supplementary Rules for Class Arbitration of the American Arbitration Association, the Claimants, Livia Sappington, Ewa Kelly, and Patrick Laborde, move for a clause construction award permitting their claims to proceed as a class action. The Respondents, Wells Fargo Advisors and Wells Fargo & Company, oppose the motion, and insist the arbitration clauses at issue preclude class arbitration.

A. Preliminary Determination of Arbitral Jurisdiction.

As an initial proposition, the Respondents applied to the United States District

Court for the Southern District of New York, No. 16-cv-00878 (VEC), for an Order staying this arbitration and compelling individual arbitration. By Order entered on August 18, 2016, the Honorable Valerie Caproni, United States District Judge, denied the application, and ruled that the issue of the propriety of class arbitration is for the Arbitrator to decide. Judge Caproni reached this decision based on her reasoning in a companion case, *Tucker v. Wells Fargo Advisors et al*, No. 15-cv-007722, in an order entered on July 1, 2016. By memorandum order entered on September 2, 2016, Judge Caproni stayed the action commenced by the Respondents pending the outcome of this arbitration.

The Respondents continue to contend that the determination of whether class arbitration is appropriate is a "gateway" issue for the court, and not a "procedural" issue for the Arbitrator. Separate and apart from the impracticality of sending an issue it doesn't want back to the court, I find I have jurisdiction over construction of the arbitration clauses at issue for the reasons ably set forth by Judge Caproni in her opinion in *Tucker*.[1]

I will accordingly proceed to construe the arbitration clauses at issue.


B. The Arbitration Clauses.

    1. The Kelly and LaBorde Agreements.

Kelly and LaBorde signed identical employment agreements[2] dated April 17, 2012 and March 21, 2013, respectively. Each agreement contains the following dispute

---

[1] *See Tucker* Memorandum, at pp. 5 – 11. I am aware there are cases to the contrary, but I believe Judge Caproni's analysis is consistent with that of most courts that have considered the authority of the Arbitrator where the contract at issue refers to the AAA Rules, as is the case in two of the agreements at issue.

[2] The title of these agreements is "New Financial Advisor Training Agreement".

resolution clause:

a) *About Arbitration.* This Agreement contains a predispute arbitration clause in Paragraph I 4(b). You should read that paragraph now. Before signing this Agreement, you should understand the following:

   ✓ You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and Wells Fargo Advisors, or a client, or any other person. This means that you are giving up the right to sue Wells Fargo Advisors, its subsidiaries or employees or any client or any other person in court concerning matters related to or arising from your employment. This includes giving up the right to a trial by jury.

   ✓ A claim alleging employment discrimination, including a sexual harassment claim, in violation of any statute, IS REQUIRED to be arbitrated under this Agreement.

   ✓ Specifically EXCLUDED from this obligation to arbitrate are any claims for State unemployment insurance (i.e., unemployment compensation, workers' compensation, work disability compensation or claims under the National Labor Relations Act.) However, statutory or common law claims made outside of the State employment insurance system alleging that Wells Fargo Advisors retaliated or discriminated against you for filing a State employment insurance claim shall be subject to arbitration. Also any claims that require you to process them under a different administrative procedure pursuant to the terms of an employee benefit plan shall not be subject to arbitration.

   ✓ Nothing in this Agreement prohibits you from filing a charge or complaint with a government agency such as the EEOC. However, upon receipt of a right to sue letter or similar administrative determination, you agree your claim will become subject to arbitration as noted herein.

   ✓ Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

   ✓ The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

   ✓ The arbitrators do not have to explain the reason(s) for their award.

   ✓ The panel of arbitrators may include arbitrators who were or are affiliated with the securities industry, or public arbitrators, as provided by the rules of the arbitration forum in the claim is filed.

    ✓ The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought to court.

b) *Agreement to Arbitrate.* Except as provided in Paragraph 14(c) below, you agree that any controversy or dispute, including but not limited to, claims of wrongful termination, breach of contract, discrimination, harassment, retaliation, infliction of emotional distress, tortuous interference with business or contract, federal, state or local statute or ordinance and/or other theory, arising between you and Wells Fargo Advisors, shall be submitted for arbitration before the FINRA. If the FINRA does not accept the controversy, dispute or claim, or any portion thereof, then the non-accepted controversy, dispute or claim shall be submitted for arbitration before the American Arbitration Association pursuant to its Securities Arbitration Rules, effective May 1, 1993.

c) *Injunctive Relief* Notwithstanding any other provision of this Agreement, Wells Fargo Advisors shall be entitled to injunctive relief from any court of competent jurisdiction to enforce *the* provisions of Paragraphs 11 and 12 of this Agreement against you*.*

2. <u>The Sappington Agreement</u>.

Sappington executed a different version of the New Financial Advisor Training Agreement on April 29, 2013. Its dispute resolution clause is as follows:

> You agree that any action instituted as a result of any controversy arising out of this Agreement, your employment or termination of your employment, shall be brought before the arbitration facility of the Financial Industry Regulatory Authority (FINRA) to the exclusion of all others, unless the rules and/or the codes of the FINRA provide otherwise. Both you and Wells Fargo Advisors agree that arbitration shall be the parties' exclusive remedy and that the results of such arbitration shall be final and binding upon them. Judgment upon any award rendered by an arbitration panel may be entered in any state or federal court of competent jurisdiction. This Agreement shall be governed by and construed in accordance with the State of Missouri (without regard to the choice of laws rules thereof). Any controversy relating to your duty to arbitrate hereunder, or to the validity or enforceability of this arbitration clause, or to any defense to arbitration, shall also be arbitrated before the FINRA. In the event you violate any part of this paragraph, you agree to pay all attorneys' fees incurred by Wells Fargo Advisors to enforce its rights hereunder.

C. <u>Procedural History</u>.

4

The Claimants brought their claims by filing an Arbitration Demand with the American Arbitration Association (AAA) on December 17, 2015. A like demand was filed simultaneously with the Financial Industry Regulatory Agency (FINRA); but FINRA, as expected, declined to exercise jurisdiction because the Demand seeks arbitration on a class basis.[3] The Demand for arbitration seeks relief under the Fair Labor Standards Act for all three Claimants, relief under the California Labor Code for Sappington, and relief under the New York Labor Law for Kelly.[4] It also seeks arbitration on an opt-out class basis for all similarly situated trainee-employees of Wells Fargo Advisors, LLC.

At a Preliminary Hearing on June 1, 2016, I established a clause construction briefing schedule that was confirmed by Order dated the same day. The briefing schedule was subsequently altered by Stipulation. I heard oral argument on October 5, 2016. The Clause Construction hearing was closed on that date, and the Clause Construction phase of the case is now ripe for decision.

D. <u>The Contentions of the Parties</u>.

    1. <u>Claimants' Contentions</u>.

The Claimants contend that class arbitration is implicit in both arbitration clauses at issue. They argue that both clauses provide that all disputes arising out of the employment relationship must be submitted to arbitration; that the clause contained in the Kelly and LaBorde agreements contains carve-outs for certain disputes, but not for

---

[3] *See* FINRA Industry Code Rule 13204(a).

[4] The Claimants' counsel filed similar but not identical claims in another case on July 23, 2015. This is the *Tucker* case mentioned above. Counsel have made me aware of the procedural history in *Tucker* in their briefing; but I do not consider the history in that case particularly germane to my decision in the matter before me now, other than to note that both cases resulted in similar rulings from Judge Caproni and are proceeding in parallel.

class claims; that neither clause at issue includes a class or collective action waiver; that the incorporation of the AAA Rules in the Kelly and LaBorde Agreements supports an interpretation allowing class arbitration; that there is no legal requirement that an arbitration provision must expressly provide for class arbitration in order for class arbitration to be covered; that the circumstances surrounding the execution of the employment agreements point toward the contemplation of class arbitration; and that any ambiguity in the clauses at issue must be construed against the Respondents, who drafted the agreements.

### 2. Respondents' Contentions.

In response, the Respondents argue that the agreements at issue are silent as to class arbitration, and that the Arbitrator may not infer an agreement for class arbitration from an agreement to arbitrate alone[5]. Moreover, they say, the use of singular terms in both clauses, such as "you" and the like, points toward the intent that only individual claims be arbitrated.

The Respondents also point out that under the AAA Supplementary Rules for Class Arbitrations, the Arbitrator is not to consider the existence of the Rules in construing whether the clause or clauses at issue provide for the arbitration of class claims.[6]

---

[5] The Respondents point out that almost all the courts that have considered whether a clause that says nothing about class arbitration as an issue to be determined by the court itself, as opposed to a review of an arbitral determination of the issue, have held that silence is determinative. Sur-Reply Brief at pp. 3-9. During oral argument, counsel for the Claimants pointed out that most arbitral clause construction awards since the Supreme Court's *Sutter* decision have ruled that agreements similar to the one at issue permit class arbitration. I accept both representations as true. Neither is determinative.

[6] *See* Rule 3, Supp. Rules. I view this directive to preclude consideration of the existence of the Rules in the abstract in making my determination, but not to prohibit consideration of whether the *parties themselves* were thinking about

Both Claimants and Respondents offer a large number of cases, including state and federal appellate decisions, trial court opinions, and clause construction arbitration awards, to support their arguments. I asked the parties to address two matters not covered in their initial briefing – whether the differences in the Arbitration clauses at issue should make a difference in the clause construction ruling, and the effect on this case, if any, of recent decisions of the United States Court of Appeals for the Seventh and Ninth Circuits, joining the National Labor Relations Board in declaring that class action waivers in agreements to arbitrate are void because such waivers violate the National Labor Relations Act and the Norris-LaGuardia Labor Act. The parties have ably briefed the issues, including those added at the Arbitrator's request.

E. Analysis.

    1. United States Supreme Court Decisions.

There are three important decisions of the United States Supreme Court, which must be held in mind in resolving the issue of clause construction.

In the first, *Green Tree Financial Corp. v. Bazzle*,[7] the Court affirmed a decision of the South Carolina Supreme Court that confirmed a class arbitration award under a broad arbitration clause that did not specifically mention class claims, noting that the agreements at issue did not preclude class arbitration, and their interpretation was a matter of state law. In the plurality opinion, the Court suggested that the interpretation of whether an agreement provided for class arbitration is a contract interpretation issue for the arbitrator, as opposed to a "gateway" (arbitrability) issue for the court.

---

the Rules when drafting and signing the Agreements. This distinction will be discussed in more detail below.
[7] 539 U.S. 444 (2003).

In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l. Corp.*,[8] the Court considered the appeal of an arbitration panel's order requiring class arbitration. Again, the arbitration provision at issue said nothing specifically addressing class arbitration, and the parties stipulated that they had not contracted for class arbitration. The Court vacated the Arbitration Panel's Clause Construction Award as exceeding the Panel's powers under the Federal Arbitration Act, holding that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so".[9] (Emphasis contained in original.) Moreover, said the Court, "[a]n implicit agreement to authorize class arbitration cannot be inferred *solely* from the fact of the parties' agreement to arbitrate."[10] (Emphasis supplied.) The Court reasoned that class arbitration is such a different "animal" from individual arbitration that a party might well agree to the latter but not the former.[11] The Court thus did not preclude a finding that an agreement may implicitly authorize class arbitration, but offered no guidance on what it would take to imply consent to arbitration of class claims.

Finally, in *Oxford Health Plans v. Sutter*,[12] the Court declined to vacate an arbitration award that construed a clause that was likewise silent on class arbitration as permitting it, noting that in *Sutter*, unlike *Stolt-Nielsen*, there was no stipulation that the parties had not contracted for class arbitration, and holding that under the deferential standard of review of an arbitrator's award required by Section 4 of the FAA, the

---

[8]  559 U.S. 662 (2010).

[9]  *Id.* at 684.

[10]  *Id.* at 685.

[11]  *Id.*

[12]  133 S.Ct. 2064 (2013).

arbitrator's construction of the scope of the agreement would not be disturbed.[13] But the Court, in ruling to uphold the Clause Construction Award, noted that its decision should not be interpreted as an agreement with the Arbitrator's construction of the parties' agreement.[14]

Thus, the Supreme Court has left parties, lower courts, and arbitrators with four principles:

(a) The parties' contract must in some manner provide for class arbitration in Order for a court or arbitrator to order arbitration of class claims.

(b) The agreement to arbitrate on a class basis may be either explicit or implicit in the contract.

(c) The Court has not ruled on what it takes to implicitly provide for class arbitration, other than it may not be inferred solely from an agreement to arbitrate.

(d) An arbitrator's interpretation of an arbitration clause will be upheld, as long as the Arbitrator is at least "arguably construing... the contract."[15]


2. <u>Lower Court Decisions</u>.

I feel no need to discuss all of the cases cited by the parties, but will only note by name those I think are most significant. Some courts, like the United States Court of Appeals for the Sixth Circuit, appear to look for an explicit provision for class arbitration.

---

[13] Id. at 2068. The Court in *Sutter*, as the Court in *Stolt-Nielsen*, declined to determine whether the determination of the availability of class arbitration is a gateway issue of arbitrability or simply a matter of contract interpretation. *Id.* As noted above, I accept the reasoning of Judge Caproni in the District Court, and hold the decision of the issue of clause construction to appropriate for the Arbitrator.

[14] *Id.* at 2070.

[15] Id. at 2068 (internal quotation marks and citations omitted).

If there is not one in the agreement at issue, even if there is also no class or collective action waiver, then the parties' silence is controlling, and class arbitration will not be permitted.[16] Others, like the United States Court of Appeals for the Second Circuit, appear to be more accepting of finding an implicit agreement for class or collective arbitration, at least in the context of determining whether to confirm or vacate an arbitrator's determination that class arbitration may proceed.[17] As the Respondents suggest, courts that have reviewed arbitration clauses *de novo*, as opposed to under the deferential standard for review of arbitrators' decisions, have largely rejected class arbitration in cases where the contract at issue says nothing about class arbitration.[18]

Despite the number of cases that began and ended their analysis with inspection of the agreement at issue for a provision expressly providing for the arbitration of class claims, I cannot square the approach of the *Reed Elsevier* line of cases with the holdings in *Stolt-Nielsen* and *Sutter,* both of which left the door open for a finding of intent to include class arbitration in cases in which the agreement at issue does not expressly authorize the arbitration of class claims. Accordingly, I will proceed to the analysis of the factors pointing toward and away from class arbitration, contained in the agreements at issue.

In this analysis, I am mindful that the mission of the Arbitrator, under both the Federal Arbitration Act and applicable state law, is to construe the arbitration clauses at issue as contracts, and to give effect to all of their terms, enabling the rights and

---

[16]   *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594 (6th Cir. 2013).

[17]   *Jock v. Sterling Jewelers*, 646 F.3d 113 (2d Cir. 2011).

[18]   *See f.n. 5, supra.*

expectations of the parties to be fulfilled and enforced.[19] To that end, the Arbitrator is to liberally construe the contracts in favor of the party who did not draft them.[20]


### 3. Discussion of Factors Identified by the Parties.

Both the Claimants and the Respondents insist the agreements at issue are not ambiguous. Both claim the contracts unambiguously require polar opposite results.

Faced with such competing contentions, one might at first blush be hard pressed to conclude anything other than that the contracts really *are* ambiguous.  But it seems to me that the rules of contract construction blur the distinction between contracts held to be ambiguous and those held to be not ambiguous.  In either case, the construing tribunal must ascertain "whether the matrix of circumstances at the time of the contract formation process, the final terms of the contract, and the conduct of the parties in performance of the contract to disclose a principal purpose in common so as to invest [the language] of the agreement at issue with a meaning compatible with and in furtherance of that mutual understanding and purpose, and to interpret the agreement according to that purpose."[21]  Accordingly, "'[w]ords and other conduct are interpreted in the light of all of the circumstances, and if the principle purpose is found it is given weight.' "[22]

If a common intent cannot be ascertained, then the agreement is ambiguous, and

---

[19] *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 220 (1983); *see fns.* 21-22, infra.

[20] *Bazzle, supra. See also fn.*23, *infra.*

[21] *Phipps v. School District of Kansas City*, 645 S.W.2d 91, 101-102.

[22] *Id.* at 103 (quoting the Restatement (Second) of Contracts (1981), §202.)

the tribunal will resolve the ambiguity against the party who selects the language.[23]

In this case, all of the agreements at issue were standard trainee agreements drafted by the Respondents, so any ambiguity must be resolved against them.

Before leaping to a finding of ambiguity, in order to properly construe the clauses at issue, I must consider not only the language contained in the agreements, but also the circumstances surrounding their execution, including the legal environment at the time. But I will first summarize the contract language pointing away from class arbitration and the language pointing toward it. I note that, according to the case law and arbitral decisions the parties have supplied to me, no single one of these is controlling by itself.

The Respondents rely on two aspects of the agreements as being especially important. The first is the agreements' silence on the subject of class arbitration. The second is the use of singular pronouns, implying, they argue, that the parties intended to arbitrate only bilaterally and not collectively. The Respondents also note two additional factors applicable to the Sappington Agreement only: (a) It does not contain the carve-outs contained in the Kelly and LaBorde agreements, so that the Claimants' arguments based on these do not apply to Sappington, (b) the only arbitration forum mentioned in the Sappington Agreement is FINRA, which does not accept class claims, illustrating again the intent not to permit class arbitration.  The AAA and its Rules are not mentioned.

The Respondents remind me that the Arbitrator is not supposed to consider the existence of the Supplementary Rules for Class Arbitrations as a factor in construing the

---

[23] *Id.* at 102.

clause in the Kelly and LaBorde Agreements.[24]  But I do not think the injunction in Rule 3 precludes the Arbitrator from determining, or at least attempting to determine, the intent of the parties in contracting for arbitration. For example, suppose there is evidence, either direct or circumstantial, that the AAA was selected as the arbitration forum *because* its Rules provide a mechanism for the determination of class claims, as it has maintained since 2003. Rule 3 would not, in my judgment, compel me to ignore such evidence. In that case, the significance of the Rules would not be a construct of the Arbitrator, but rather this Tribunal's recognition that the existence of the Rules was part of the basis of the bargain *of the parties*. Whether there is such evidence, or other evidence of like import, in this case will be discussed below.

There are cases, both judicial and arbitral, in which the court or arbitrator found the attributes cited by the Respondents persuasive of intent to arbitrate individual claims only. There are other cases, cited by the Claimants, in which the court or arbitrator was unimpressed.

The Claimants emphasize the inclusive nature of claims covered by the dispute resolution clauses at issue. "All" means "all", they argue. The Claimants also point to "carve-outs" for certain claims in the Kelly and LaBorde Agreements, and note these exceptions do not include an exception for class arbitration. They note that none of the agreements at issue contain class arbitration waivers. They also argue that the agreements must be interpreted, under Missouri law, in accordance with the ordinary meaning a party would attach to the language objectively, regardless of any party's subjective intent. They conclude that a reasonable employee who signed on to work for

---

[24]  They have no compunction, however, in asking me to consider the *absence* of the same Rules in construing the Sappington Agreement.

the Respondents would expect to arbitrate class claims because they were agreeing to arbitrate all claims, and that such reasonable expectation must be enforced.

As with the attributes noted by the Respondents, there are cases in which the court or arbitrator found arguments like the Claimants' to be persuasive, and other cases in which the decision maker did not.

### 4. The Legal Environment at the Time of Execution.

At the time the agreements at issue were signed, class arbitration, and the related but not identical issue of class action waivers, had been "hot button" issues for years. Agreements to arbitrate employment and consumer claims exploded in the 1990's. Inevitably, class and collective claims began to be asserted in arbitration. Arbitration forum providers reacted to this development in different ways. In 1999, FINRA adopted its Rule rejecting the arbitration of any claim asking for relief on behalf of a class. The American Arbitration Association took a different approach, adopting its Supplementary Rules for Class Arbitrations in 2003.

Businesses and employers wrestled with the class claim issue, too. Many inserted class action waivers in the agreements they presented to their customers and employees. Bar associations and industry groups conducted seminars on drafting arbitration agreements in which the decision to include or omit a class waiver was a prominent part of the discussion.

Judicial and regulatory reaction varied as well. California, for example, adopted a rule that class action waivers are *per se* unconscionable[25], a ruling set aside, in the

---

[25] *Discover Bank v. Sup. Ct.*, 113 P.3d 1100 (Cal. 2005).

context of arbitration, by the United States Supreme Court in *AT&T Mobility v. Concepcion*.[26] Congress, in enacting the Dodd-Frank Act, had ordered the study of mandatory arbitration, presumably including the unavailability of class relief due to waivers, by the Consumer Financial Protection Bureau. In 2012, the National Labor Relations Board, in *D.R. Horton, Inc.*[27], held that a class action waiver in an employment agreement is void as an unfair labor practice under Sections 7 and 8 of the National Labor Relations Act. The United States Court of Appeals for the Fifth Circuit has refused to follow this ruling, as have the Courts of Appeals for the Fourth, Eighth and Second Circuits.[28] But the Seventh and Ninth Circuits now agree with the Board.[29]  None of the cases brought by the NLRB are directly on point with respect to the issues raised by the instant motion, but that the issues of class arbitration and whether class claims could be waived were prominent at the time the agreements were presented to the Claimants is, in my opinion, significant.

In any event, in 2012 and 2013, the issue of class arbitration was all over the arbitration landscape, including the advisability of including a class action waiver if one expected to avoid the arbitration of class claims. The drafters of the agreements at issue were doubtless aware of these developments, as well as of the ruling in *Stolt-*

---

[26]  563 U.S. 333 (2011).

[27]  357 N.L. R.B. 184(2012).

[28]  *See D.R. Horton, Inc. v. National Labor Relations Board*, 737 F.3d 344 (5th Cir. 2013); *Owen Bristol Care, Inc. v. National Labor Relations Board*, 702 F.3d 1050 (8th Cir. 2013); *Sutherland v. Ernst & Young*, 726 F.3d 290 (2d Cir. 2013).

[29]  *Lewis v. Epic Systems Corp*, 823 F.3d 1147 (7th Cir. 2016); *Morris v. Ernst & Young US, LLP*, 2016 WL 443308 (9th Cir. 2016).

*Nielsen* in 2010. They were likely aware, too, that *Sutter* was in the judicial pipeline[30]. At the very least, a sophisticated party like Wells Fargo Advisors, not to mention its parent company, was chargeable with notice of the evolving legal atmosphere in a way the Claimants were not.

Thus, the legal environment surrounding the agreements at issue is a telling consideration in construing the clauses at issue, and their provisions must be interpreted in that light.

5. <u>The Textual Differences in the Clauses at Issue</u>.

Each of the Claimants held the same position. Each signed a standard employment agreement drafted by the Respondents. The Sappington Agreement appears to have been a later version, in which alterations to the arbitration clause were deliberate. The Agreements as a whole are very similar. The most significant changes were in the dispute resolution provisions. The Sappington Agreement omits the lengthy explanation of arbitration found in the Kelly and LaBorde Agreements. With respect to the Agreement to Arbitrate itself, the Sappington Agreement shares the comprehensive scope of what must be arbitrated with the other two agreements, but deletes the "carve-outs". It makes no reference to the AAA as an alternative arbitration forum to FINRA. In it, arbitration is the exclusive "remedy", and FINRA is the only available forum.

There is no expressly stated class action waiver in any of the agreements.

D. <u>Arbitrator's Determination</u>.

---

[30]  The District Court in *Sutter* ruled in 2011 and was affirmed by the Third Circuit in 2012. *See Sutter v. Oxford Health Plans, LLC,* 2011 WL 734933 (D.N.J. 2011), *aff'd* 675 F.3d 215 (3d Cir. 20120, *aff'd* 133 S. Ct. 2064 (2013).

Because of the textual differences in the Sappington Agreement, I will deal with it separately from the Kelly and LaBorde Agreements.

1. <u>The Kelly and LaBorde Agreements</u>.

The issues joined in construing the arbitration clauses in these agreements are extremely close. But after much reflection, I find the Claimants' position to be the better reasoned. The Arbitrator finds, as the Claimants argue and the Respondents appear to concede, that the clauses at issue must be construed to reflect the ordinary meaning that the parties signing the agreements would have attached to them objectively, in light of the reasonable expectations of the parties, and not in the sense of the subjective intent of any particular party.[31]

Construing the clauses at issue in that light, the comprehensive nature of the agreements to arbitrate becomes very important. When the Claimants executed the agreements at issue, they would have had the reasonable expectation that any legal claim they might have against the Respondent Wells Fargo Advisors would be submitted to binding arbitration, except for any claims the Agreements stated were excluded. There is no evidence that the Claimants knew or thought about the FINRA Rules or the AAA Rules, and I would not have expected them to have looked up the forum rules any more than I would have expected them to find, read, and understand the Federal Arbitration Act, or to generally familiarize themselves with Missouri law.[32] They would have known only that they were agreeing to arbitrate whatever claims they thought they had or that their lawyers told them they had. These would have included claims for unpaid compensation.

---

[31] *See f.n.s* 16-18, *supra*; *see also* 11 WILLISTON ON CONTRACTS 31.4 (4th Ed.)

[32] The substantive law of Missouri is the choice of law selected in the agreements at issue.

As the Claimants point out, class or collective actions are common in cases brought under both the FLSA and the state laws alleged in the Arbitration Demand. The Claimants are unlikely to have known that this is true specifically, but the Respondents certainly did, or at least were chargeable with notice that such is the case. The Respondents, as the saying goes, did not ride into the presentation and signing of the agreements on a tricycle. They are sophisticated parties who doubtless engaged counsel to draft the agreements, or who at the very least had counsel available to review the drafts and advise them, as their counsel conceded at oral argument.

A party in the position of the Respondents in 2012 and 2013 knew or should have known the following:

- The comprehensive nature of the arbitration provisions.

- That there is no carve out for class or collective wage claims in the agreements, despite the existence of other carve-outs.[33]

- That the agreements contain no class action waiver.

- That any employee who believed, with or without advice of counsel, that he or she had a claim for unpaid compensation would expect to arbitrate it.

- That if any such claim included a claim under state or federal wage and hour laws, the Claimant would likely be advised to bring it as a class or collective action.

- That in the absence of a class action waiver or carve-out, there was a

---

[33] Respondents point out that class and collective claims are not technically either "claims" or "remedies", but rather procedural devices enabling the efficient pursuit of claims, and cite authority to support that interpretation. I accept that the foregoing statement is technically correct, but note that even lawyers and judges frequently use the terms "claims" and "remedies" when referring to class and collective actions. It is, after all, somewhat awkward to talk about class "procedural constructs and devices". Even FED. R. CIV. P. 23 is entitled "Class *Actions*", despite the logical conclusion that if proceeding on behalf of a class it not itself a "claim", it really can't be an "action", either. I accordingly reject the argument that the lack of a class action exclusion or carve out is meaningless.

substantial risk that any wage claim would include a request for class relief.

- That under the case law available at the time of contracting, a finding by either a court or an arbitrator that the availability of class relief is implicit in the Agreements was not only possible, but likely.

Viewing the reasonable expectations of the parties at the time of the execution of the agreements in this light, I conclude that (a) the Claimants would have expected to arbitrate any and all wage claims they might have, including class claims if their attorneys advised it, and (b) the Respondents would have expected that an order compelling arbitration of class claims was at least possible, and in fact probable.[34]

Any other interpretation would allow the Respondents the benefit of a class-action waiver without having to include one in the agreements, all the while ducking any issues of unconscionability or violation of the NLRA. And that is a "bridge too far" for this Arbitrator to cross.

It is especially telling, I think, that the Respondents made an apparent effort to address class arbitration without including a waiver when they re-wrote the standard agreement for trainee employees and produced the version Sappington signed. As noted above, the alternative of arbitration under the AAA Rules, which do have a mechanism for addressing class claims, is not found in the Sappington Agreement. The only forum available under that agreement is FINRA, which has declined to accept class claims since 1999. The only reasonable conclusion one can reach for why this change was made was to solve a problem the Respondents knew they had with the prior

---

[34] I do not find the clause under discussion ambiguous. But I find that Respondents at the time of execution should have known that a reviewing Tribunal, whether judicial or arbitral, would likely *at least* see the clause to be susceptible to an interpretation requiring class arbitration, and, that the law would require the ambiguity to be interpreted against them. *See fns.* 20, 23, *supra.*

version – the probability, or at least the possibility, they would have to arbitrate class claims. To that important extent, the Respondents shared the Claimants' expectations in executing this version of the trainee-employee agreements. Thus, the drafting change from the Kelly and LaBorde Agreements to the Sappington Agreement is in my judgment significant circumstantial evidence that the former contemplated class arbitration.[35]

I attach no real significance to the use of the singular pronouns in these agreements. This argument seems to me to be only a clever way of re-casting the argument that an agreement must expressly provide for class arbitration in order for arbitration on a class basis to be available under it. Practically all contracts are written in the singular when referring to each party's agreements. I would not expect an employment agreement to refer to joint claims with other employees except in the context of a class action waiver, which is contained in none of the agreements at issue.

Thus, I find that the Kelly and LaBorde Agreements, fairly construed, implicitly provide for the arbitration of claims arising under them or related to them on a class basis.

6. The Sappington Agreement.

The Sappington Agreement is different. I do not conclude that Sappington was any more knowledgeable or sophisticated than Kelly or LaBorde. She doubtless had the same expectations as they. But in her case, the expectations were not shared with the Respondents, as I find to have been the case with the other claimants. The Respondents had made drafting changes designed to eliminate the possibility of class

---

[35] I also think it is unnecessary to split hairs over whether this interpretation depends on finding of ambiguity. At the very least, this particular clause is susceptible of a reasonable interpretation that it permits class or collective actions. That the Respondents wrote it that way is sufficient to bind them to that interpretation. *See f.n.* 21, *supra*.

arbitration; and whether one considers the changes cynical or merely clever, there is no way to infer an implicit meeting of the minds allowing class arbitration under this Agreement without running afoul of the holding in *Stolt-Nielsen*.

Accordingly, I find there is no contractual basis for the arbitration of class claims in the Sappington Agreement.

F. Award.

1. The Kelly and the Laborde Agreements contractually permit the arbitration of the class wage and hour claims brought in the Demand for Arbitration.

2.  The Sappington Agreement does not contractually permit the arbitration of the class wage and hour claims brought in the Demand for Arbitration.[36]

2.  The Kelly and LaBorde claims shall proceed to consideration of Class Certification. The Case Manager will at the appropriate time schedule a telephonic scheduling conference for the purpose of setting a schedule for discovery and submissions with respect to certification issues.

3. This proceeding is, however, stayed for not less than thirty (30) days so that any party may seek judicial review by motion to vacate this Partial Final Award. A party may apply by motion for extension of the thirty (30) day stay for good cause shown.

This _18th_ day of October, 2016.

Robert L. Arrington, Arbitrator

---

[36]  This ruling necessarily implies that Sappington must proceed on individual claim basis. While counsel for the Respondents stated at oral argument that the Respondents are content for her to pursue her individual claims in the AAA forum, it is up to Sappington herself to decide whether to take the Respondents up on their offer, or to re-file her claim with FINRA without the demands for class relief.

I, Robert L. Arrington, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Clause Construction Award.

_____
Robert L. Arrington