```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/31/18
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
WELLS FARGO ADVISORS, LLC,                           :
                                                     :
                              Petitioner,            :
                                                     :
              -against-                              :   16-CV-8956 (VEC)
                                                     :
LIVIA SAPPINGTON, EWA KELLY a/k/a Eva                :   ORDER AND OPINION
Kelly, and PATRICK LABORDE;                          :
                                                     :
                              Respondents.           :
-----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

   Wells Fargo Advisors, LLC ("Wells Fargo" or "Petitioner"), like many other employers, has elected to require its employees to arbitrate their employment disputes. While there is nothing wrong with an employer making that decision, Wells Fargo appears to want it both ways: it wants to limit its employees to an arbitral forum, but then wants to be able to get a court to intervene when it disagrees with the outcome of the arbitration. In this instance, Wells Fargo has petitioned this Court to vacate an award resulting from an arbitration between Wells Fargo[1] and Respondents Livia Sappington, Ewa Kelly, and Patrick LaBorde. *See* Petition to Vacate in Part Clause Construction Award ("Petition") [Dkt. 1]; Notice of Motion to Vacate in Part Clause Construction Award ("Notice of Mot.") [Dkt. 4]. Specifically, Wells Fargo seeks vacatur of the portion of the award that construed Kelly's and LaBorde's contracts with Wells Fargo to permit class-wide arbitration of their claims. *See* Petition.

---

[1]    The arbitration also included an additional entity, Wells Fargo & Company, which is not a party to the instant matter. *See* Clause Construction Award ("Award") [Dkt. 5-9] at 1.

1

Having opted to require its employees to arbitrate their disputes, Wells Fargo now has to live with the arbitrator's decision. For the reasons discussed below, Wells Fargo's request to vacate the arbitration award is DENIED.

## I.     BACKGROUND

All of the Respondents had employment agreements with Wells Fargo, and Kelly's and LaBorde's employment agreements (the "Agreements"), which were executed in 2012 and 2013, are identical. Award at 2–4. *See also* Kelly Agreement [Dkt. 5-1]; LaBorde Agreement [Dkt. 5-2]. Their agreements contain a lengthy dispute resolution provision that provides for arbitration of disputes, with carve-outs that exclude certain types of claims from mandatory arbitration. Award at 2–4. The dispute resolution provision requires disputes to be arbitrated either before the American Arbitration Association ("AAA"), pursuant to its May 1, 1993 rules, or before the Financial Industry Regulatory Authority ("FINRA"). *Id.* at 4. Sappington's agreement, executed later in time, contains a shorter dispute resolution provision that does not contain explicit carve-outs and requires covered disputes to be arbitrated before FINRA. *Id.* FINRA does not permit arbitration on a class basis. *Id.* at 5 and n.3 (citing FINRA Industry Code Rule 13204(a)).

Respondents sought class-wide arbitration of their claims before the AAA and FINRA,[2] and Wells Fargo sought from this Court a stay of the class arbitration and to compel individual arbitration. Award at 1–2, 5; *see Wells Fargo Advisors v. Sappington* ("*Sappington I*"), 16-CV-878. This Court denied Wells Fargo's request to stay class-wide arbitration and, looking to its decision in an earlier related matter,[3] determined that it was up to the arbitrator to decide whether

---

[2]     FINRA rejected the class arbitration demand. Award at 5.

[3]     The Court's Order in *Wells Fargo Advisors, LLC v. Sappington*, 16-CV-878, adopted the reasoning of and incorporated the Court's opinion from *Wells Fargo Advisors, LLC v. Tucker, et al.*, 15-CV-7722. *See Sappington I* Order [Dkt. 5-8].

2

class arbitration was available under Respondents' contracts. Award at 2; *Sappington I* Order. Wells Fargo appealed that decision to the Second Circuit. *See Sappington I* [Dkts. 40, 41].

While Wells Fargo's appeal was pending, the parties litigated the proper construction of the contracts before the AAA arbitrator (the "Arbitrator"). Award at 5. Ultimately, the Arbitrator determined that Kelly's and LaBorde's agreements permitted class arbitration of their claims, while Sappington's did not.[4] Award at 17–21.

Wells Fargo seeks vacatur of the clause construction determination that the Agreements permit class arbitration, contending that the Arbitrator exceeded his powers both by making the determination that he should decide whether the Agreements permitted class arbitration and by looking beyond the four corners of the Agreements when deciding that they did. *See* Memorandum of Law in Support of Petition to Vacate in Part Clause Construction Award ("Pet.'s Mem.") [Dkt. 6] at 1, 7–21. Wells Fargo also contends that the Arbitrator manifestly disregarded the law in reaching his decision. *See id.* at 1–2, 21–24.

After Wells Fargo moved to vacate the Award, the Second Circuit affirmed this Court's determination in *Sappington I* that the Arbitrator should determine whether the employment agreements permitted class arbitration, holding that Kelly's, LaBorde's, and Sappington's agreements "clearly and unmistakably express[] [the parties'] intent to let an arbitrator decide whether they agreed to authorize class arbitration." *Wells Fargo Advisors, LLC v. Sappington* ("*Sappington I Appeal*"), 884 F.3d 392, 394 (2d Cir. 2018).

---

[4] Respondents do not seek vacatur of the Award's construction of Sappington's contract. Memorandum of Law in Opposition to Petition to Vacate in Part Clause Construction Award ("Opp.") [Dkt. 13] at 6.

## II. DISCUSSION

### A. Legal Standard

"Under the Federal Arbitration Act, a district court may vacate an arbitration award if: (1) the award was procured by corruption, fraud, or undue means; (2) the arbitrators exhibited evident partiality or corruption; (3) the arbitrators were guilty of misconduct such as refusing to hear evidence pertinent and material to the controversy or any other misbehavior that prejudiced the rights of any party; or (4) the arbitrators exceeded their powers." *Pfeffer v. Wells Fargo Advisors, LLC*, 723 F. App'x 45, 47 (2d Cir. 2018) (quoting 9 U.S.C. § 10(a)) (citation and internal quotation marks omitted). The "party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)) (internal quotation marks omitted).

A challenge that an arbitrator has exceeded his powers falls under § 10(a)(4), which is "consistently accorded the narrowest of readings." *Anthony v. Affiliated Computer Servs., Inc.*, 621 F. App'x 49, 50–51 (2d Cir. 2015) (citations and internal quotation marks omitted). "An arbitrator exceeds his authority only by (1) considering issues beyond those the parties have submitted for his consideration, or (2) reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Id*. at 51 (quoting *Jock v. Sterling Jewelers, Inc.,* 646 F.3d 113, 122 (2d Cir. 2011)) (alteration and internal quotation marks omitted). "Under § 10(a)(4), [courts] do not consider whether the arbitrators correctly decided [an] issue." *Id.* at 52 (citations and internal quotation marks omitted). *See also DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 824 (2d Cir. 1997) ("DiRussa's real objection appears to be that the arbitrators committed an obvious

4

legal error in denying him attorney's fees.  Section 10(a)(4) was not intended to apply to such a situation.").

The Second Circuit also permits vacatur if the award was rendered in manifest disregard of the law.  *Tully Constr. Co. v. Canam Steel Corp.,* 684 F. App'x 24, 26 (2d Cir. 2017) (citation omitted).  "A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden [and a court must find] both that (1) the arbitrator[] knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrator[] was well defined, explicit, and clearly applicable to the case." *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (citations omitted).  "The Second Circuit has emphasized that the doctrine requires more than error or misunderstanding with respect to the law."  *PDV Sweeny, Inc. v. ConocoPhillips Co.*, No. 14-CV-5183 AJN, 2015 WL 5144023, at *7 (S.D.N.Y. Sept. 1, 2015) (quoting *Wallace v. Buttar,* 378 F.3d 182, 189–90 (2d Cir. 2004)) (internal quotation marks omitted), *amended*, No. 14-CV-5183 (AJN), 2015 WL 9413880 (S.D.N.Y. Dec. 21, 2015), *aff'd*, 670 F. App'x 23 (2d Cir. 2016).  "The party challenging an award for manifest disregard of the law must demonstrate that the arbitrator actually knew about the relevant rule of law."  *D.H. Blair*, 462 F.3d at 111 (citation omitted).

More generally, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law.  On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justification* for the outcome reached."  *Wallace*, 378 F.3d at 190 (citations and internal quotation marks omitted) (emphasis in original).  "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case."  *D.H. Blair*, 462 F.3d at 110 (citation and

internal quotation marks omitted).  "It is only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (citation, alterations, and internal quotation marks omitted).

### B. The Arbitrator Did Not Exceed His Powers

#### i. The Authority to Construe the Agreements

In the Award, the Arbitrator acknowledged this Court's ruling in *Sappington I* that he had the authority to determine whether the agreements permitted class arbitration, and, rather than reassess the basis for his authority, he adopted this Court's reasoning in *Tucker*. Award at 2.

Wells Fargo asserts that "the arbitrator exceeded his powers by deciding issues of arbitrability without a contractual basis for doing so." Pet.'s Mem. at 8. *See also id*. at 8–11; Reply Memorandum of Law in Further Support of Petition to Vacate in Part Clause Construction Award ("Reply") [Dkt. 16] at 4–5. Wells Fargo essentially seeks to relitigate the Court's delegation of this question to the Arbitrator. Wells Fargo argues that the Arbitrator exceeded his powers because he lacks the authority to determine the delegated question, and because he failed to conduct his own "independent analysis" of this issue: "although the Court delegated the issue to the arbitrator, the arbitrator was still obligated to verify whether the parties' arbitration agreements 'clearly and unmistakably' delegated the issue of arbitrability." Pet.'s Mem. at 10.

The Arbitrator did not exceed his authority; he did not consider issues beyond those submitted for his consideration and he did not reach issues prohibited by law or the parties' agreements. This Court explicitly delegated the question of class arbitrability to the Arbitrator, and the Second Circuit has since affirmed this Court's decision. Although the Second Circuit affirmed on different grounds, both this Court and the Second Circuit agreed that it was up to the

Arbitrator to decide whether class arbitration was permissible under the agreements.[5] And although the parties briefed this issue before the Circuit's opinion had been published, the Circuit's holding quite clearly forecloses Wells Fargo's argument that the Arbitrator exceeded his powers by deciding the issue that this Court squarely put before him. That the Arbitrator adopted this Court's reasoning rather than conducting his own searching analysis does not mean that the Arbitrator acted outside the scope of his powers.

### ii. The Arbitrator's Substantive Determination

In reaching his decision that class arbitration was permitted under the Agreements, the Arbitrator considered relevant Supreme Court and lower court precedent, and he discussed the arguments made by the parties. Award at 7–14. The Arbitrator found that Missouri law permitted him to consider evidence outside the Agreements when interpreting them, in particular the circumstances at the time of their formation and the parties' conduct, even if the Agreements' terms were unambiguous. *Id*. at 11. He highlighted Wells Fargo's arguments regarding the text of the Agreements, including their silence on class arbitration and their use of singular pronouns, as well as Respondents' arguments regarding the breadth of the arbitration clauses, the existence of explicit carve-outs for certain types of claims, and the absence of a class arbitration waiver. *Id*. at 12–14. The Arbitrator then conducted his own review of the legal environment that existed at the time of the agreements' execution, finding that approaches to and the law regarding class arbitration varied across states and Circuits, and that some businesses and employers were advised to use waivers if they wished to preclude the possibility of class-wide arbitration. *Id*. at

---

[5] This Court determined the availability of class arbitration was a question of contract construction for the arbitrator rather than a "gateway" issue for the Court; the Circuit assumed without deciding that whether an arbitration clause authorizes class arbitration is a "gateway" issue for a court, but that there was "clear and unmistakable evidence that the parties [in this case] intended to arbitrate all questions of arbitrability, including whether they agreed to authorize class arbitration." *Sappington I Appeal*, 884 F.3d at 396–97, 397 n.2.

7

14–16. The Arbitrator discussed the differences between Kelly's and LaBorde's agreements and Sappington's, finding that the latter contained deliberate alterations from the former— specifically, a more concise arbitration provision that lacked carve-outs for certain claims and that required arbitration through FINRA. *Id.* at 16.

Following from his analysis, the Arbitrator determined that, although the question was close, the Kelly and LaBorde agreements permitted class arbitration.[6] Award at 17. He focused on the comprehensive nature of the agreements, and the expectations that Wells Fargo's employees might have had when signing the agreement regarding their ability to arbitrate claims regarding compensation. *Id*. The Arbitrator emphasized: the arbitration provisions' comprehensive nature; the absence of a carve-out for class or collective wage claims, despite the presence of other carve-outs; the absence of a class action waiver; the likelihood that employees would have expected to arbitrate claims for unpaid compensation and would have been advised to bring them as a class or collective; the substantial likelihood that claims for unpaid compensation would seek class relief; and that case law at the time the Agreements were executed made it likely that a court or arbitrator would have found that the Agreements implicitly permitted class relief. *Id*. at 18–19. The Arbitrator's view was that interpreting the Agreements to preclude class-wide arbitration would allow Wells Fargo to benefit from a class action waiver without actually including one.[7] *Id*. at 19. The Arbitrator viewed the differences between the earlier Agreements and Sappington's as additional circumstantial evidence that the earlier Agreements contemplated class arbitration. *Id*. at 19–20. The Arbitrator rejected Wells

---

[6]  The Arbitrator reached the opposite conclusion relative to the Sappington agreement, finding it did not permit class arbitration. Award at 20–21.

[7]  Wells Fargo attacks this portion of the Award as constituting an application of public policy rather than law. *See* Pet.'s Mem. at 21. The Court disagrees. There is nothing inherently policy-driven about the Arbitrator's view that an employer that wants to preclude class-wide arbitration needs to do so expressly.

Fargo's argument that focused on the Agreements' use of singular pronouns because "[p]ractically all contracts are written in the singular when referring to each party's agreements. I would not expect an employment agreement to refer to joint claims with other employees except in the context of a class action waiver, which is contained in none of the agreements at issue." *Id.* at 20.

Wells Fargo argues that the Arbitrator exceeded his powers by "disregard[ing] the Agreements' contractual requirements, going beyond the four corners of the Agreements and relying on extrinsic evidence and sheer speculation to support his conclusions" even though "no one, including the arbitrator, consider[ed] the Agreements ambiguous." Pet.'s Mem. at 11. According to Wells Fargo, looking beyond the four corners of an unambiguous contract is inappropriate under Missouri law.[8]  *Id.* at 13; Reply at 5–7.  Wells Fargo thus contends that the Arbitrator improperly considered circumstances surrounding the execution of the Agreements and the legal environment at the time of execution, improperly drew conclusions based on the differences between Kelly's and LaBorde's agreements and Sappington's, looked to modern AAA Rules rather than the 1993 Rules set forth in the Agreements, and improperly invoked public policy.  Pet.'s Mem. at 16–21; Reply at 6–7.  Focusing on the Agreements themselves, Wells Fargo points to the use of the pronouns "you" and "your" as evidence that the parties intended to arbitrate only individual claims on a non-class basis.  Pet.'s Mem. at 13–16; Reply at 7–8.

Respondents argue, *inter alia*, that even if the Arbitrator made errors—and they contend he did not—"legal error is not a valid basis for vacatur in this Circuit."  Reply at 16 (citing *Jock*, 646 F.3d at 122, 125).

---

[8]  The Agreements provide that Missouri law applies. *See* Kelly Agreement ¶ 16; LaBorde Agreement ¶ 16.

Wells Fargo's argument, except for its extensive discussion of pronoun selection and invocation of the 1993 AAA Rules, is premised primarily on a footnote in the Award stating that the Arbitrator "do[es] not find the clause under discussion ambiguous." Award at 19 n.34. But Wells Fargo ignores—and, for that matter, Respondents do too—the context in which the Arbitrator made that statement. The remainder of the footnote finds that the clause would likely be seen as "susceptible to an interpretation requiring class arbitration," suggesting that the clause in fact *is* ambiguous despite the Arbitrator's stating otherwise. *Id*. The subsequent footnote asserts that it is "unnecessary to split hairs over whether this interpretation depends on [a] finding of ambiguity. At the very least, this particular clause is susceptible of a reasonable interpretation that it permits class or collective actions." *Id*. at 20 n.35. Under Missouri law, a contract is ambiguous when "its terms are susceptible to fair and honest differences in interpretation." *State ex rel. Greitens v. Am. Tobacco Co.*, 509 S.W.3d 726, 741 (Mo. 2017) (citation omitted). Therefore, the Court struggles to see how the Arbitrator, by effectively discussing the Agreements' susceptibility to different interpretations, did anything but find the arbitration provision to be ambiguous.[9]

Additionally, the parties overlook the Arbitrator's introduction to his discussion of their arguments:

> Both the Claimants and the Respondents insist the agreements at issue are not ambiguous. Both claim the contracts unambiguously require polar opposite results. Faced with such competing contentions, one might at first blush be hard pressed to conclude anything other than that the contracts really are ambiguous. But it seems to me that the rules of contract construction blur the distinction between contracts held to be ambiguous and those held to be not ambiguous. In

---

[9] An additional indication that the Arbitrator found the terms of the Agreements to be ambiguous is his invocation of the principle that ambiguity is construed against a contract's drafter, in conjunction with his statement that the provision's "susceptib[ility to] a reasonable interpretation that it permits class or collective actions . . . is sufficient to bind [Wells Fargo] to that interpretation." Award at 11–12, 20 n.35 (citations omitted). In other words, the Arbitrator would not have discussed binding Wells Fargo, the Agreements' drafter, to this "reasonable interpretation" supporting class claims unless the provision was ambiguous.

10

> either case, the construing tribunal must ascertain "whether the matrix of circumstances at the time of the contract formation process, the final terms of the contract, and the conduct of the parties in performance of the contract to [sic] disclose a principal purpose in common so as to invest [the language] of the agreement at issue with a meaning compatible with and in furtherance of that mutual understanding and purpose, and to interpret the agreement according to that purpose."  Accordingly, "'[w]ords and other conduct are interpreted in the light of all of the circumstances, and if the principle purpose is found it is given weight.'"

Award at 11 (footnotes omitted).  The Arbitrator relied on *Phipps v. School District of Kansas City*, 645 S.W.2d 91, 101–02, 103 (Mo. Ct. App. 1982), as authority permitting him to consider extrinsic evidence *regardless* of whether the Agreements are ambiguous.  Award at 11 nn.21, 22.  Under the Arbitrator's reading of Missouri law, as demonstrated by his citation to *Phipps*, a contract's "component words and terms are interpreted according to the full circumstances of the manifestation of intent event [and this rule] does not depend upon an ambiguity or nonambiguity . . . ."  645 S.W.2d at 101 (citing Restatement (Second) of Contracts, § 200, Comment b; § 202, Comment a (1981)).  Said differently, the Arbitrator determined that, as a matter of Missouri law, it was permissible for him to look beyond the four corners of the contracts when determining whether the agreements permitted class arbitration, regardless of whether he found the provision to be ambiguous.

The proposition in *Phipps* that extrinsic evidence may be used to interpret an unambiguous term (rather than to construe it—that is, defining a term's meaning as opposed to its legal import, *see Monsanto Co. v. Syngenta Seeds, Inc.*, 226 S.W.3d 227, 232–33 and n.13 (Mo. Ct. App. 2007) (citations omitted)) has persisted into some more recent Missouri cases.  *See, e.g.*, *Jackson v. Mizuho Orthopedic Sys., Inc.*, No. 11-00799-CV-W-GAF, 2013 WL 12291776, at *11 (W.D. Mo. Jan. 9, 2013) (citing *Monsanto*, 226 S.W.3d at 232–33); *Good Hope Missionary Baptist Church v. St. Louis Alarm Monitoring Co.*, 306 S.W.3d 185, 191 (Mo.

Ct. App. 2010) (citing, *inter alia*, *Monsanto*, 226 S.W.3d at 232–33; *Phipps*, 645 S.W.2d at 100–01)). This proposition is in tension with decisions from the Supreme Court of Missouri that "[i]f a contract is unambiguous, the parties' intent may be gathered from the terms of the contract alone, and no extrinsic evidence may be introduced to contradict the terms of the contract or to create an ambiguity." *Greitens*, 509 S.W.3d at 741 (citation omitted). *See also Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428–29 (Mo. 2003) ("Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract alone, and a court will not resort to construction where the intent of the parties is expressed in clear, unambiguous language. . . . Extrinsic evidence may not be introduced to vary or contradict the terms of an unambiguous agreement or to create an ambiguity.") (citations omitted).

A court might resolve this tension by noting that extrinsic evidence could permissibly be used to *interpret* a term without *varying* or *contradicting* it, which is forbidden. Additionally, the Court notes that the Supreme Court of Missouri in *Greitens* wrote that intent "*may* be gathered from the terms of the contract alone," not "must," which could provide leeway for courts to review extrinsic evidence beyond the terms of a contract. At a minimum, however, in reviewing this case law, the Court finds that the Arbitrator's reading of Missouri law on this issue to be colorable.

Moreover, even if Wells Fargo were correct that the Arbitrator misapplied Missouri law relative to interpretation of an unambiguous contract, that does not provide a basis to vacate the Arbitrator's decision. It is well-settled law that an arbitrator does not exceed his powers by making a legal error. But more important, this Court's reading of the Arbitrator's decision is that the Arbitrator in fact found that the Agreements were ambiguous on this point. That being the case, Missouri law permits consideration of extrinsic materials. *See, e.g.*, *State ex rel. Pinkerton*

*v. Fahnestock*, 531 S.W.3d 36, 44 (Mo. 2017) (noting that the use of extrinsic evidence is proper to resolve a contractual ambiguity) (citation omitted). Finally, although the Arbitrator did consider extrinsic evidence, he used the proper AAA Rules[10] and did not ignore the text of the contract—he analyzed the Agreements and engaged with Wells Fargo's arguments regarding the Agreements' silence on class arbitration and pronoun use, which, in his view, were not persuasive.[11] Award at 12–14, 17–20.

In all, the Court has no trouble concluding that the basis of the clause construction award is at least colorable. In assessing whether the Arbitrator exceeded his authority, the Court does not focus on whether he correctly decided the issue, but must simply determine whether the Arbitrator considered issues beyond those submitted for his consideration or reached issues clearly prohibited by law or the terms of the Agreements. *See Anthony*, 621 F. App'x at 51, 52 (citations omitted). The Court finds that the Arbitrator did not exceed his authority. Accordingly Wells Fargo's Petition fails on this second basis as well.

---

[10] The Second Circuit explicitly rejected Wells Fargo's argument that the Arbitrator could not utilize the current form of the AAA Rules, finding that Rule 1 of the 1993 Rules states that the rules and any amendments to them apply in the form existing at the time an arbitration demand is received, and the demands in this case were received after the AAA Rules had been amended to permit class arbitration. *See Sappington I Appeal*, 884 F.3d at 396–97 (citations omitted).

[11] The Court notes that the Second Circuit found this same pronoun argument unavailing as to the antecedent question of whether the Court or Arbitrator was to determine the availability of class arbitration:

> Wells Fargo also points to what it terms the "bilateral terminology" of the contracts—"you and Wells Fargo," . . . —to argue that the parties did not intend to let an arbitrator decide the class arbitration availability question in particular. . . . But references to the employee and the employer are to be expected in an employment contract; by themselves such references shed little, if any, light on whether the parties intended an arbitrator or a court to decide if the arbitration clause authorizes class arbitration. Indeed, even an express contractual statement concerning class arbitration could easily be phrased in bilateral terms. Consider the following: "You and Wells Fargo agree that the availability of class arbitration as to certain claims shall be determined by an arbitrator." We therefore are not persuaded that the references to "you and Wells Fargo" by themselves reveal any intent to prevent an arbitrator from deciding the specific question of class arbitration.

*Sappington I Appeal*, 884 F.3d at 397–98.

## C. The Arbitrator Did Not Manifestly Disregard the Law

The Arbitrator dedicated more than two pages of his Award to a discussion of relevant Supreme Court precedent, interpreting and distilling the decisions in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), *Stolt-Nielsen*, and *Oxford Health Plans v. Sutter*, 559 U.S. 662 (2010), into a set of four principles:

> (a) The parties' contract must in some manner provide for class arbitration in [o]rder for a court or arbitrator to order arbitration of class claims. (b) The agreement to arbitrate on a class basis may be either explicit or implicit in the contract. (c) The Court has not ruled on what it takes to implicitly provide for class arbitration, other than it may not be inferred solely from an agreement to arbitrate. (d) An arbitrator's interpretation of an arbitration clause will be upheld, as long as the [a]rbitrator is at least arguably construing . . . the contract.

Award at 7–9 (internal quotation marks omitted). The Arbitrator also discussed the lower court opinions he deemed the most significant. *Id.* at 9–10. And his discussion of the legal environment at the time of the Agreements' execution included references to other cases, including *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011), and class action waiver cases in several Circuits. *See* Award at 14–16.

Wells Fargo argues that the Arbitrator manifestly disregarded the law, having been "well aware of governing legal principles, but elect[ing] to ignore them." Pet.'s Mem. at 21–22. Wells Fargo's argument proceeds to lay out its interpretation of *Stolt-Nielsen* and *Concepcion*, *id.* at 22–23, followed by a string cite of cases that purportedly "found no contractual agreement to arbitrate on a class or collective basis." *Id.* at 23–24. Wells Fargo argues that the Arbitrator disregarded Supreme Court cases, namely *Stolt-Nielsen* and *Concepcion*, which it believes stand for the proposition that "where arbitration agreements are 'silent' as to class arbitration, then classwide procedures are impermissible." Reply at 9. Wells Fargo also argues that the Arbitrator ignored Second Circuit precedent that "interpreted similar agreements as being

14

'silent.'" *Id*. "[T]he Arbitrator's inference of an agreement to arbitrate as a class without a basis in the Agreements themselves is precisely the sort of inference barred by *Stolt-Nielsen*." *Id*. In effect, Wells Fargo contests the proposition that an agreement might implicitly permit class arbitration, and challenges the Arbitrator's decision to the contrary.

Respondents contend that the governing law purportedly ignored is not well-defined, explicit, and clearly applicable, and that, nonetheless, the Arbitrator afforded the divided case law "ample analysis and consideration." Opp. at 21. They also argue that the Arbitrator's legal interpretations of the relevant precedent were correct. *Id*. at 21–23, 23 n.7.

The Arbitrator did not manifestly disregard the law. There is no evidence that the Arbitrator committed "more than error or misunderstanding with respect to the law," if any error was committed at all. *See Wallace*, 378 F.3d at 189 (citation omitted). Instead, the Court finds that the Arbitrator reviewed and explored the relevant case law, albeit interpreting it differently than Wells Fargo does. Additionally, the Court notes that the law in this area is in flux, but more importantly, as with review of any contract, courts' determinations on the availability of class arbitration are tethered to the idiosyncratic terms of the relevant agreements, rather than pure legal doctrine. *Compare Rame, LLC v. Popovich*, 878 F. Supp. 2d 439, 448–52 (S.D.N.Y. 2012) (finding that arbitrator did not exceed her powers in determining that the availability of class arbitration was implied in a contract featuring a broadly-worded arbitration provision that lacked a class action waiver), *with Mallh v. Showtime Networks Inc.*, No. 17CV6549(DLC), 2017 WL 5157247, at *3–5 (S.D.N.Y. Nov. 7, 2017) (compelling individual arbitration for plaintiff bringing a putative class action where the relevant agreement contained an arbitration clause and an explicit class action waiver). And last, although irrelevant to the Court's highly-deferential review on this point, the Arbitrator's position appears to be legally correct under Second Circuit

law: "*Stolt-Nielsen* does not foreclose the possibility that parties may reach an implicit—rather than express—agreement to authorize class-action arbitration."[12]  *Jock*, 646 F.3d at 123 (citation and internal quotation marks omitted).

In sum, Wells Fargo's contentions are essentially disagreements with the Arbitrator's interpretation of relevant case law.  There is no evidence that the Arbitrator knew of and ignored some "well defined, explicit, and clearly applicable" precedent.  Accordingly, the Arbitrator did not manifestly disregard the law, and Wells Fargo's Petition is denied on this ground as well.

### III.  CONCLUSION

The Court finds that the Arbitrator did not exceed his powers or manifestly disregard the law in reaching his decision.  Wells Fargo's motion to vacate is denied.  The Clerk of Court is instructed to terminate Docket Entry 4 and close the case.

**SO ORDERED.**

Date:  July 31, 2018  
New York, New York

_____  
**VALERIE CAPRONI**  
**United States District Judge**

---

[12]  The Second Circuit's opinion in *Jock* discusses both the *Stolt-Nielsen* and *Concepcion* cases on which Wells Fargo relies for its "manifest disregard" argument.  *See Jock*, 646 F.3d at 118–27.

16